OAK WOODS CEMETERY ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7956. Promulgated April 25, 1927.

Computation of the "wastage allowance" allocable to cemetery lots sold after March 1, 1913, out of a tract owned and partly improved prior thereto, *held* erroneous.

*Louis J. Behan, Esq.,* and *John A. Stolp, C. P. A.,* for the petitioner.

*A. H. Fast, Esq.,* for the respondent.

Deficiencies aggregating $17,869.51 for the fiscal years ended February 28, 1919, 1920, 1921, and 1922. Respondent included in petitioner's income certain amounts received for the perpetual care of the lots, and at the hearing confessed error as to this. Certain amounts deducted as "wastage" for roads and pathways were disallowed, and this is the only issue.

### FINDINGS OF FACT.

The petitioner is a corporation organized under a special charter granted by the General Assembly of the State of Illinois. It has its principal place of business at Chicago, where it is engaged in the business of conducting a cemetery.

The total area of the cemetery was and is 7,705,042.50 square feet. Of this area 577,018.66 square feet was covered by three artificial lakes. The balance of the land was laid out in sections and some portion was occupied by roadways between the sections. Some of these sections were subdivided into lots, while other sections were not subdivided or improved.

About 1920 the petitioner had its vacant lands appraised as of March 1, 1913. The vacant land which had been subdivided had an area of 816,355.8 square feet which was given values per square foot ranging from $1.50 to $3, varying according to the section in which it was located. The land which it classified as "unsubdivided" had a total area of 639,629 square feet, and other land which it classified as "unimproved" had an area of 1,258,492 square feet. Both these latter areas were valued at $3 per square foot. Each of the sections denominated "unsubdivided" or "unimproved" was valued as a whole, including any portion thereof which might subsequently be laid out for paths and driveways. The number of square feet of land in each of the above three classifications of land and of each of the sections composing each group was accepted by the respondent, as well as the values placed on the

subdivided land. He, however, lowered the value per square foot of the "unsubdivided" and "unimproved" land from $3 to $2, which determination was accepted by the petitioner.

In computing the tax for the years involved in this proceeding, the petitioner, in determining its gain or loss upon the sale of lots in the "unsubdivided" and "unimproved" sections, added to the March 1, 1913, value of each lot that portion of the value of the roads and pathways laid out which it considered as properly allocable to each lot. It accomplished this by adding 20 per cent to the March 1, 1913, value, which it termed a wastage allowance.

Section "T" of the cemetery, which was classed as "unimproved," has an area of 121,433 square feet. In 1912 the petitioner had an offer for this section from a company which desired to utilize the entire section by erecting a community mausoleum thereon. If the transaction had been consummated there would have been no wastage in this section.

Section "M" of the cemetery, which was classed as "unimproved," has an area of 415,860 square feet. In the lower portion of this section 6,608.68 square feet have been laid out as pathways.

At the time of the hearing there had been laid out in roads 563,013 square feet and in pathways 579,844.86 square feet. If the remaining sections of the cemetery are laid out on the same basis as those now laid out, there will be an additional wastage.

OPINION.

STERNHAGEN: The petitioner owned a tract of land devoted to cemetery purposes. By March 1, 1913, some improvements had been made. The principal roadways around the sections had been laid out, lakes had been completed, some of the sections had been subdivided into lots and pathways, and some of the lots had been sold. Other sections remained unsubdivided and unimproved. The value of the property on March 1, 1913, is agreed, but the petitioner now contends that such value, in so far as it applied to the sections not then subdivided, included land which would be subsequently used for pathways and other unsalable purposes, that this amounted approximately to 20 per cent of the value of the whole, and that its cost should be spread over and added to the cost or basis of lots sold, to arrive at the basis for determining the profit on each such lot. This is the so-called "wastage" allowance in controversy.

The appraisers testified that in valuing each section they gave each square foot therein its value. The aggregate of the square foot values of each section was then found to be the total value of the section, with no allowance for pathways or other "wastage" within the section. It seems clear that, in theory this value of the whole section should be used as the basis of the gain on the

salable lots only, and that the gain on each lot should be reduced by the proportionate part of the total wastage within the section. If this theory only were in issue, petitioner's claim would be readily sustained.

But the evidence shows that petitioner. is claiming too much. Twenty per cent appears to be the percentage of value reflecting the wastage of the entire cemetery tract, including the main roadways, lakes and other nonsalable land already laid out on March 1, 1913. The valuation of March 1, 1913, did not include them. It only included the subsequent further wastage in each unsubdivided and unimproved section, which was loosely said to be "4 or 4½ per cent of the entire tract." Plainly the wastage of main roadways, lakes, etc., which had taken place prior to March 1, 1913, could not be regarded as capital at that time and may not be recovered through a reduction of the gain on the lots subsequently sold in the unsubdivided sections; and this is what petitioner seeks in its claim to a 20 per cent allowance. The respondent is on this issue sustained.

*Judgment will be entered on 20 days' notice, under Rule 50.*